```
 1                    IN THE UNITED STATES DISTRICT COURT --
                         FOR THE DISTRICT OF COLORADO
 2
     Criminal Action No. 21-CR-00014-PAB
 3
     UNITED STATES OF AMERICA,
 4
          Plaintiff,
 5
     vs.
 6
     JAMARIUS JONES,
 7
          Defendant.
 8   _____

 9                          REPORTER'S TRANSCRIPT
                                  Sentencing
10   _____

11          Proceedings before the HONORABLE PHILIP A. BRIMMER,

12   Judge, United States District Court for the District of

13   Colorado, commencing at 11:10 a.m., on the 27th day of May,

14   2022, in Courtroom A701, United States Courthouse, Denver,

15   Colorado.

16                               APPEARANCES

17          Brian Dunn, U.S. Attorney's Office,

18   1801 California Street, Suite 1600, Denver, CO 80202, appearing

19   for the plaintiff.

20          Gregory R.S. Daniels of Daniels Law Firm, LLC,

21   1159 Delaware Street, Denver, CO 80204-3607, appearing for the

22   defendant.

23

24    Proceeding Recorded by Mechanical Stenography, Transcription
       Produced via Computer by Janet M. Coppock, 901 19th Street,
25         Room A257, Denver, Colorado, 80294, (303) 335-2106
```

1                          PROCEEDINGS

2          *THE COURT:*  The matter before the Court is United

3    States of America versus Defendant No. 3, Jamarius Jones.  This

4    is Criminal Case 21-CR-14.

5          Mr. Dunn appears on behalf of the United States.  Good

6    morning to you.

7          *MR. DUNN:*  Good morning, Your Honor.

8          *THE COURT:*  Mr. Daniels appears on behalf of

9    Mr. Jones.  Mr. Jones is present.  He is in custody.  Good

10   morning to both of you.

11         *MR. DANIELS:*  Good morning, Judge.

12         *THE COURT:*  We are here today for sentencing in this

13   matter.

14         Mr. Daniels, have you had a chance to review the

15   Presentence Investigation Report and the addendum and review

16   those with Mr. Jones?

17         *MR. DANIELS:*  Yes, sir, Your Honor.

18         *THE COURT:*  And you filed on his behalf an objection

19   to the Presentence Investigation Report, which is Docket No.

20   77.  Any additional objections or any additional filings on

21   behalf of Mr. Jones?

22         *MR. DANIELS:*  No, sir, Your Honor.

23         *THE COURT:*  Thank you.

24         Mr. Dunn, have you had a chance to review the

25   Presentence Investigation Report and the addendum as well?

1          *MR. DUNN:*  I have, Your Honor.

2          *THE COURT:*  The United States has filed the following:

3     A response to Mr. Jones' objection, which is Docket No. 89, a

4     motion to grant Mr. Jones the additional one-level decrease for

5     acceptance of responsibility, which is Docket No. 80, the

6     government's motion to dismiss Count Four of the Superseding

7     Indictment pursuant to the government's agreement in the Plea

8     Agreement, and also -- I think that's it.  Any additional

9     filings or any objections on behalf of the United States?

10         *MR. DUNN:*  No, Your Honor.

11         *THE COURT:*  Thank you.

12         All right.  Why don't we go ahead and as an initial

13    matter take up the objection that was filed.  It's an objection

14    to Paragraph 40.  Mr. Daniels, go ahead.  Any additional

15    argument?

16         *MR. DANIELS:*  No, Your Honor.  I will rest on the

17    motion.  I have certainly read the replies by both probation

18    and the prosecution.  I have shared those with Mr. Jones as

19    well, so we will just rely on what the record has been so far,

20    Judge.

21         *THE COURT:*  All right.  Thank you.  Mr. Dunn, anything

22    more from you?

23         *MR. DUNN:*  Nothing further, Your Honor.

24         *THE COURT:*  Thank you.  So the issue is one that has

25    to do -- I think that Mr. Dunn and I think Mr. Dunn correctly

1    characterized it, it's really a question of reasonable

2    foreseeability.  There is a five-level increase if a firearm

3    was brandished or possessed.  It's uncontroverted that

4    Mr. Jones did not do any of those things.  But the question is

5    whether it's relevant conduct that other people did, which

6    other persons who are co-defendants and who were involved in

7    this particular robbery did, in fact, possess firearms.  That's

8    a stipulated part of the Plea Agreement.

9        And the question then becomes whether or not it is

10   reasonably foreseeable to Mr. Jones that someone would -- one

11   of the co-defendants would, in fact, possess a firearm.  And

12   the guideline which is 1B1.3(a)(1) talks about "all reasonably

13   foreseeable acts or omissions of others in furtherance of the

14   jointly undertaken criminal activity" can form relevant conduct

15   and, as a result, result in the enhancement of a person's

16   guideline range.

17       And the United States is also correct that that

18   standard does not require actual knowledge on the defendant's

19   part, but in other words, Mr. Jones didn't have to know himself

20   exactly.  The question is just whether it was foreseeable that

21   someone might.  And I think in light of that fact, it's

22   important to think about what exactly the facts of this

23   particular case are.

24       So this isn't a robbery -- isn't a carjacking on a

25   civilian car.  This is an armored car.  Armored cars have gun

1    ports in them.  Armored cars require that the people who are

2    co-defendants were staking this out.  They were following it.

3    Why?  So that they could try to identify whether someone was

4    going to be working alone.  Why?  Because if you have two

5    people and you know that the people who drive armored cars are

6    armed, two people who are both armed is a lot more difficult to

7    pull off than if you have one particular person.

8           And I think it's also reasonably foreseeable that he

9    would believe that the people that drive armored cars are

10   armed.  This particular victim was armed.  They are all armed,

11   and therefore it's reasonably foreseeable that in order to be

12   able to rob someone who is armed, that you are armed as well so

13   that you can deter the armed person working from just simply

14   shooting you or otherwise, you know, being able to prevent you

15   from carrying out the robbery.

16          So I do find that it was reasonably foreseeable to

17   Mr. Jones; and as a result, I am going to overrule his

18   objection to Paragraph 40 of the Presentence Investigation

19   Report.

20          I find as a result that the total offense level is 26.

21   Mr. Jones' Criminal History Category is III.  And that results

22   in an imprisonment range of between 78 and 97 months and a fine

23   range of between $25,000 and $250,000, the supervised release

24   range being between one and three years.

25          Given the Court's ruling on the objection, Mr. Dunn,

1   any objection to that being the applicable guideline range for

2   sentencing?

3           MR. DUNN:  No, Your Honor.

4           THE COURT:  Mr. Daniels?

5           MR. DANIELS:  No, sir, Your Honor.

6           THE COURT:  Then why don't we proceed as follows:

7   Namely, I will hear from Mr. Daniels first as to his

8   recommendation of a sentence for Mr. Jones.  After that I will

9   hear from Mr. Dunn as to the government's recommendation.  And

10  finally I will give Mr. Jones an opportunity to address the

11  Court if he wishes to regarding what he thinks the sentence

12  should be.

13          Mr. Daniels, go ahead.

14          MR. DANIELS:  Would Your Honor prefer the podium or

15  the table?

16          THE COURT:  The podium is better because of

17  amplification purposes, but if there is a reason you want to

18  stay at the table, you can too; whatever you want to do.

19          MR. DANIELS:  It's all but seven steps I can make,

20  Judge.

21          Judge, the sentence that we are asking for is the

22  sentence that was recommended by the Presentence Investigation

23  Report, and that specifically was 38 months consecutive.  And

24  before I go too much further, I did want to introduce his

25  mother and father who flew up from Houston, mom Aredelia and

1    father Dimitri.   Damarius is 24.   At the time he committed

2    these offenses he was 21.

3            Where to begin.   Judge, obviously there were

4    extraordinary efforts made by Mr. Jones to be in front of Your

5    Honor with this guideline range and with the agreements by the

6    prosecution.   And he I believe is a young man who not only came

7    from a good home, but understands that he came from a good home

8    and has begun to understand the import of that and the

9    ramifications of that.

10           He certainly understands having been in custody that

11   not everybody and most folks that are with him don't have two

12   loving parents who would come up from Houston just to attend

13   his sentencing knowing that they can't do anything other than

14   sit and watch and support him with their presence and

15   communicate to Your Honor that they love their son.

16           And Your Honor is certainly aware of the Plea

17   Agreement that it was a 78-month sentence.   And the probation

18   office finds themselves and it's a new occasion for me where

19   they recommend a variant sentence.   And I think it's obviously

20   why they recommended the sentence that they did.   He was

21   serving a 40-month sentence in Texas.   We agreed that this

22   would be concurrent with the Texas sentence.   There is a

23   remainder of the 38 months and that's why they made it

24   consecutive to the Texas sentence.   And that's how I understood

25   it from the probation office.   I appreciated it and we ask the

1   Court to embrace it.  And that was again the product of our

2   discussions.

3       The reason that I appreciated the offer gets into what

4   I -- after the time that I agreed to the sentence with

5   Mr. Dunn, both before I received that report I had on other

6   cases dealings with the Bureau of Prisons specifically on

7   concurrent-type sentences, et cetera, and learned some of those

8   policies and became concerned that what I had felt was the --

9   our intent for the agreement of a 78-month concurrent sentence

10  with Texas wouldn't probably be effectuated by the Bureau of

11  Prisons.

12      So when I saw that the probation office had

13  recommended 38 consecutive months to the 40-month sentence he

14  was already serving, which was a crime that occurred after, so

15  I think Your Honor understands, but --

16      THE COURT:  Yeah, it can get complicated.  Walk me

17  through it.  So he has been sentenced in the Eastern District

18  of Texas.

19      MR. DANIELS:  Correct.  And to back up, he committed

20  this crime.  He flew from Texas -- he has one person in the

21  group that he knows really well said, hey, Damarius come help

22  us with this.

23      THE COURT:  Chronologically this crime occurred first,

24  and then the crime in the Eastern District of Texas occurred

25  later, and that's what caused him to be arrested.  And he was

1    prosecuted and then sentenced on that case first.

2         *MR. DANIELS:*  Correct.  And the person that he knew in

3    the crime that was committed in Colorado looked at Damarius

4    like a little brother.  So regardless of how you want to see

5    that relationship, that's why Damarius didn't have a gun.

6    That's why Damarius -- in discovery, he received less than half

7    what everybody else did.  He was just part player in this

8    crime.  In Texas, they caught -- they were detected before they

9    got very far.  They were still in the car.  They hadn't done

10   anything further.  So the purported roles for each of those

11   players is unknown, but that is the chronology.

12        Damarius understands -- Damarius has a lot of work and

13   he understands why he did what he did.  And he is confident and

14   I am confident in him that he won't do anything like that

15   again, that that part of his life is over, and part of it is

16   being with people that are willing to do that and part of it is

17   himself.

18        And but the machinations, the specifics of the

19   sentence, when Mr. Dunn and I spoke, we had spoke about a

20   concurrent sentence concurrent with the 40 months in Texas.

21   Obviously, he had been doing that sentence for at least two

22   years, January of 2020, I believe, or '21 I think.

23        *THE DEFENDANT:*  2020.

24        *MR. DANIELS:*  He has been in jail since that day.  The

25   language of the Plea Agreement is somewhat different.  And I

 1    understand Mr. Dunn through his office had permission for the

 2    language in the Plea Agreement, and the Presentence

 3    Investigation Report is somewhat different.  The effect is

 4    somewhat different.  I can tell Your Honor Mr. Dunn and I did

 5    not talk about the Bureau of Prisons or when that 78-month

 6    sentence in Colorado would likely start.

 7            Mr. Jones is on a writ from Texas.  I don't believe he

 8    has any custody time in Colorado at all secondary to him being

 9    on a writ and sitting in Colorado for the last six months or so

10    on that writ.  And so I don't -- it was my feeling when I saw

11    the 38-month sentence consecutive to Texas in the probation

12    report -- that wasn't the product of any conversation with

13    me -- I assumed without checking with Mr. Dunn that it was

14    based on a conversation with him.  It was not, according to

15    what Mr. Dunn tells me.

16            So we're in a position where I believe that we were

17    all on the same page that that was the appropriate sentence as

18    effectuating the intent that Mr. Dunn and I had, but I have

19    learned today that it may not be.  And I certainly have all the

20    respect in the world for Mr. Dunn and so I am not -- I believe

21    the 38-month sentence which would not start until he is done

22    with his Texas sentence is a fair approximation of what we had

23    intended given the efforts that Mr. Jones made in this case

24    which I think are unequivocal and have real results.

25            And based on everything, I believe that's the

1   appropriate sentence and that's the sentence that we would ask

2   for.  I have explained it to Damarius.  He understands, as well

3   as do his parents.

4           THE COURT:  What do you anticipate with the pending

5   state case?

6           MR. DANIELS:  I don't know too much about the state

7   case.  I will be honest, Judge, I really don't know.

8           THE COURT:  That's a --

9           MR. DANIELS:  One moment.

10           THE COURT:  Yeah, sure.

11           MR. DANIELS:  Judge, I am a little hesitant to --

12           THE COURT:  You don't need to say anything that may --

13           MR. DANIELS:  It's pending.  There are other people in

14   it.  Mr. Jones says that somebody said he was involved.  He

15   wasn't.  He believes he will be dismissed, but I hesitate to --

16           THE COURT:  Yeah, in other words, not quite sure.

17           MR. DANIELS:  And I won't stand here and tell you that

18   Mr. Jones was involved because his friend from Texas asked him

19   to and that's the only reason.  Certainly we have all had

20   friends that did different -- some types of abhorrent conduct

21   and we didn't join.  Obviously, there are different levels of

22   that, but we would ask the Court to follow the Presentence

23   Investigation Report.  We believe it's fair for Mr. Jones.

24           We believe Mr. Jones, he will still spend several more

25   years in custody at least and he will -- I believe he has

 1   already learned a lot being taken from Texas and being brought

 2   to Colorado.  Being in custody was disorienting for him.  Being

 3   taken out of Texas was disorienting for him.  He has learned a

 4   lot from it and the importance of family primarily.  So I don't

 5   have anything further unless the Court has any questions of me,

 6   but I appreciate the time, Judge.

 7          THE COURT:  Thank you, Mr. Daniels.

 8          Mr. Dunn?

 9          MR. DUNN:  If I may approach the podium as well.

10          THE COURT:  Sure.

11          MR. DUNN:  Thank you, Your Honor.

12          And obviously as Mr. Daniels stated and the language

13   of the Plea Agreement, we are asking for the bottom of the

14   guidelines of 78 months to run concurrent with his remaining

15   sentence in Case 20-CR-12 in the District of Texas.

16          Your Honor, briefly running through the crime,

17   obviously this was a --

18          THE COURT:  So maybe at least at some point address

19   the probation office's recommendation of a variant of

20   consecutive as to what appears to be the government's

21   recommendation which is different which is to impose bottom of

22   the guidelines and run concurrent.

23          MR. DUNN:  I can address that now.  From reading the

24   Presentence Report, my understanding is that the recommendation

25   for the variance is basically to deduct the 40 months from his

 1    sentence from the Eastern District of Texas from the 78 months.

 2    What it took into consideration was not just our recommendation

 3    to run the remainder concurrent, but also the fact that this

 4    second crime in January of 2020 was committed so close in time

 5    to this armored truck robbery.  That is part of their

 6    justification for the variance.

 7              Just running through the time line, I think Your Honor

 8    probably understands --

 9              THE COURT:  Well, yeah, I understand that, but it

10    would seem, but the probation officer may correct me if I'm

11    wrong, it would seem like they are just two means to the same

12    end.  Do you think that's true?  Do you think that if the Court

13    were to sentence Mr. Jones in a way that you suggest, that he

14    wouldn't serve any more time than if I followed the Probation

15    Department's recommendation and sentence him to 38 months

16    consecutive?

17              MR. DUNN:  I don't think that's right, Your Honor.  I

18    think the remainder of the sentence by my calculation,

19    considering he was arrested in January of 2020 and he has

20    served time, I guess it would be -- I calculated about 28

21    months.  There is 12 months at this time remaining on his

22    sentence, so the 78 months would be run concurrent to the 12

23    months remaining on his sentence.

24              THE COURT:  Oh, right.  That would be different.  But

25    in terms of the mechanism of a consecutive sentence, we could

 1    vary and then have it be the same amount, do you have any

 2    comment on that?

 3        MR. DUNN:  If we were to use that mechanism by running

 4    the 78 months concurrent to the 12 months remaining, I think

 5    the consecutive time would be 66 months.

 6        THE COURT:  Okay.  Yeah, I think that what would

 7    happen.  If the sentence that was -- that we were taking into

 8    account were a state sentence and if that state sentence was

 9    the primary sentence, which it would be because he has already

10    been sentenced on it, then we would have a different situation.

11    Even if this Court were to run the federal sentence

12    concurrently, the Bureau of Prisons wouldn't even -- wouldn't

13    be ticking off time while that state sentence is running.  Why?

14    Because the Bureau of Prisons worries that that state sentence

15    could be changed, that all of the sudden it could be

16    reconsidered.  He could be let out.

17        And as a result, they wait until it's done.  They wait

18    until it's done, and that can have some unintended or, to use

19    the term we are talking about earlier, unforeseeable results in

20    terms of, you know, what the people in the courtrooms during

21    the federal sentencing thought of, but I don't think that's the

22    situation here because it's a federal sentence.

23        So whether the mechanism is to run it concurrently or

24    consecutively, it would still be calculated fine.  There would

25    not be some type of situation that we would have to worry

1   about, so I think however -- whether it's concurrent or

2   consecutive adjusted would probably not make a difference.

3   Sorry to interrupt.

4           *MR. DUNN:*  Not at all, Your Honor.

5           So I think a brief time line.  Obviously, this crime

6   took place in late October 2019.  At that point our

7   understanding is that Mr. Jones, and this is from cellphone

8   data returned to Texas in January of 2020.  The FBI was

9   following Mr. Jones and Mr. Taylor and a couple of the other

10  co-defendants in the Eastern District of Texas.  They were

11  engaged in really the same behavior, parking next to an armored

12  truck.  It seems that they were about to get out and do the

13  exact same thing.  At that point the FBI intervened and

14  arrested Mr. Taylor and Mr. Jones and his co-defendants.

15          Inside there were firearms similar to the firearms

16  that were used in the October robbery.  Your Honor, this is

17  obviously much the same conduct.  Obviously, they were arrested

18  at that time.  They were indicted soon thereafter, and they

19  were prosecuted.  And Mr. Jones pled guilty to an intended

20  Hobbs Act robbery.  The 924(c) was dismissed.

21          In the meantime while this case was still being

22  investigated -- this case was not indeed until early of 2021,

23  so just a brief time line.  In October 31st of 2018, obviously

24  the Court from reading the Presentence Investigation Report and

25  having familiarized itself with the case conceded the nature

1    and circumstances of the offense were serious.  They were

2    violent.  They were life threatening.  As Your Honor pointed

3    out, the victim in the case was armed.  She was not able to

4    pull her gun because the defendants got on top of her very

5    quickly.

6         THE COURT:  By the way, while I think of it, Mr. Dunn,

7    just to make a record, the victim does not appear to be present

8    today.

9         MR. DUNN:  She is not.

10         THE COURT:  But I wanted to ask you about that if

11    perhaps she is just not in the courtroom but here and rather

12    she wished to make a statement or anything else.

13         MR. DUNN:  Your Honor, what's contained in Exhibit B

14    is what's been conveyed to our office from the victim.

15    Obviously, the victim is asking for maximum punishment for

16    anyone involved.  It was horrible, obviously, for the victim,

17    not just the trauma at the time, but mainly the victim was in

18    trouble with her employer.  She was in trouble with her

19    employer for not placing the money correctly into the vault.

20    And that was -- that's obviously unfortunate.  She has several

21    children.  She had to lose a job that she had for seven years

22    and she was terminated.

23         THE COURT:  And when you talk about that, what you're

24    describing is that she had failed to follow protocols at the

25    time of the robbery, and because of her failure to follow those

1   protocols, that got her in trouble with her employer.

2          *MR. DUNN:*  That's correct, Your Honor.  I think that's

3   fair, much more articulately put.  So obviously the loss to the

4   victim, the trauma of having guns pointed in her face and then

5   being doubly blamed for what the defendant did, losing her job,

6   it's been awful for her.

7          That being said, the nature and circumstances of the

8   offense being as violent as they were, the role of the

9   defendant was different from the role of the other three

10  co-defendants.  The defendant obviously came to Texas for the

11  purposes of robbing -- helping rob this armored truck.  He was

12  in the switch car belonging to another co-defendant and stayed

13  in contact and aided the defendants who jumped out of that

14  vehicle with firearms, stayed in contact by phone and then

15  helped them escape, collected what was 10 percent of the money

16  and went back to Texas and immediately engaged in very similar

17  behavior.

18         That being said, the history and characteristics, I

19  believe the consideration for Mr. Jones' role, age is the

20  consideration we believe that Mr. Jones received a large

21  benefit when the government agreed to dismiss the 924(c).

22  Obviously, we feel that we had a strong case for the 924(c)

23  given the events leading up to the robbery and the events after

24  the robbery, but given his age and given his relatively low

25  criminal history, although at the time of his arrest it seemed

1    to be escalating and very, very serious.

2           Obviously the new robbery and not returning any of the

3    money or doing anything with respect to the victim indicates a

4    lack of respect for the law.  I think that the deterrence value

5    of a lengthy prison sentence is high in this case, and so Your

6    Honor, I do believe a guideline sentence is appropriate even to

7    the extent that it's somewhat run concurrent with his crime

8    from January of 2020.

9           As far as the state -- the pending state case that

10   Your Honor asked about, it is burglary.  It appears to be a

11   burglary of vehicles.  I have not received any communication

12   from the DA down in Texas.  I wouldn't be surprised if it runs

13   concurrent or does not involve a consecutive sentence, but at

14   this point it has not been prosecuted.  Without any other

15   questions, that's all I have to say, Your Honor.

16          *THE COURT:*  Thank you, Mr. Dunn.

17          Mr. Daniels, anything more from you?

18          *MR. DANIELS:*  No, Your Honor.

19          *THE COURT:*  Mr. Jones, would you like to address the

20   Court regarding what you think the sentence in this case should

21   be?

22          *THE DEFENDANT:*  Yes, sir.

23          *THE COURT:*  If you don't mind going to the podium,

24   then.  Go right ahead.

25          *THE DEFENDANT:*  Your Honor, I have wrote a letter that

1    I would like to read.

2            *THE COURT:*  Go ahead.

3            *THE DEFENDANT:*  I want to start by saying I accept

4    full responsibility for my actions.  Before coming to jail, I

5    was young, dumb and lost, hanging around the wrong crowd,

6    taking life for granted, not realizing what I was getting

7    myself into, being selfish, only caring about my homies and

8    thinking fast money was the only way to fix my problems.

9    Little did I know God had something in store for me and that

10   was prison.  He stopped me in my tracks and sent me down to

11   look at all I had to lose.

12           Being in prison has taught me a lot, like how to

13   become the man I need to be, and that has been a man of God,

14   being a family man, getting married, starting a family,

15   becoming a hard-working man, being patient, because in life

16   nothing comes fast or overnight.

17           I can honestly say I was raised in a -- I wasn't

18   raised in a bad home.  I always had my mom and dad.  I just

19   made wrong decisions.  Every day I ask God for forgiveness

20   because being in prison is not anything easy, being surrounded

21   by gang members, having to watch my back every time I walk out

22   of my cell, because I don't know what's next in life, having to

23   accept racism from guards because of the color of my skin,

24   looking out the window wishing it all would end already.

25           There is even nights where you don't get no sleep

1    because inmates are screaming all night and then getting a

2    call -- then calling home just to get bad news saying my

3    grandmother passed away.  She was my everything.

4          I just wish I could go back and do things different,

5    but I can't.  I have to stay strong and do things better from

6    here on out.  With all that being said, I would like to

7    apologize to the victim and her family for everything she had

8    to go through and things she has to -- things she's having to

9    experience.  It was never my intention to harm her in any type

10   of way.  And also I would like to apologize to the City of

11   Denver, Colorado.  Amen.

12         *THE COURT:*  Thank you very much, Mr. Jones.  You may

13   have a seat.

14         The United States Sentencing Commission guidelines are

15   advisory, and as a result, the Court does not have to sentence

16   within the guidelines.  Nevertheless, the Court has taken the

17   guidelines into account.  The Court has also taken into account

18   the statutory factors which are set forth at 18, United States

19   Code, Section 3553(a).

20         The factors that I think bear on this particular case

21   is that we have a situation where it is a really serious crime

22   that was involved here.  There is no doubt about the fact that

23   Mr. Jones played a smaller role, but, you know, we hear the

24   switch car, the get-away driver.  You know, if you are

25   participating in it, you bear responsibility for what happens.

1           And what happened to the victim in this case is, you

2    know, could very well be long lasting.  Her life, not only did

3    she lose her job, you know, because apparently she didn't

4    follow some of the protocols regarding money handling and

5    whatnot, but she is really just wrecked.  I mean,

6    psychologically she is wrecked.

7           And, you know, this happens with bank robbers too.

8    You know, jaded people in the criminal justice system may be

9    like, you know, you've got to get over it.  Well, when you have

10   a gun pointed at you, and like she said, she literally thought

11   she was going to get executed.  She was put on her knees.  And

12   this was an armored vehicle.  She had to have a reason to think

13   that.  Maybe they want to get rid of the witness.  And she is

14   really struggling to live a normal life.  Why?  She is just out

15   there doing her job and then Mr. Jones and his friends decide

16   to, you know, get some free money.

17          And, of course, you know, the bad thing about the

18   situation is that Mr. Jones didn't need free money.  He is

19   perfectly capable of earning money on his own.  And whatever

20   the perceived need to get involved in this type of activity,

21   you know, in reality never existed in the first place.  And

22   Mr. Jones is, of course, acutely aware of that now.  To see the

23   changes of the season he has to look out a window.  He thinks

24   about, you know -- I mean, his parents, you know, do they get

25   free money?  They don't get free money.  They work hard.

1   They've got their own business.  You know, they've got a lot

2   people to support.  Mr. Jones, 11 and a half siblings?

3            You know, a big family, all of them seem to be doing

4   very well.  Some of them are, of course, just kids still, but,

5   you know, Mr. Jones had the role models.  He is not the first

6   kid to fail to appreciate all he had going for him, but on the

7   other hand, he wasn't just a juvenile at the time he committed

8   this crime either, so none of that is good.

9            I understand the difference in terms of the chronology

10  in this particular case, but I think that we have to really

11  focus on, you know, how serious this crime was from the

12  beginning, which is, I mean, this isn't like one of the most

13  stupid crimes you can do, like a bank robbery where people

14  typically get like $6,000.  This is robbery of an armored car

15  and they got a huge amount of money.  And maybe the defendant

16  only got a smaller cut, but it's still a lot of money, all of

17  which is now gone, apparently.

18           I think that the appropriate sentence in this case,

19  and believe me there is a really good case for running this

20  sentence consecutive to the other case because of the nature of

21  the crime, but I am going to go along with the government's

22  recommendation which was contained in the Plea Agreement and

23  run this particular sentence concurrent to his sentence in the

24  Eastern District of Texas and sentence the defendant to the

25  bottom of the guidelines.  I think that will be a sufficient,

1   but not greater than necessary, punishment for the defendant.

2       I am not going to make any findings regarding whether

3   the sentence runs consecutive or concurrently to his future, at

4   least the potential sentence in the state case.  It won't

5   matter because this federal sentence will run -- you know,

6   whether the judge in Texas runs it, assuming there is a

7   conviction, if that judge runs it concurrently, then that's

8   just how it works.  If the judge runs it consecutively, then

9   who knows, but it really won't affect the sentence either, so I

10  won't make any findings or recommendations in that regard.

11      Therefore, pursuant to the Sentencing Reform Act of

12  1984, it is the judgment of the Court that the defendant,

13  Jamarius Jones, is hereby committed to the custody of the

14  Bureau of Prisons to be imprisoned for a term of 78 months.

15  The term of imprisonment imposed should run concurrently to the

16  defendant's imprisonment in Case No. 20-CR-12-MAC-ZJH(4) in the

17  United States District Court for the Eastern District of Texas.

18      Upon release from imprisonment, the defendant shall be

19  placed on supervised release for a term of three years.  Within

20  72 hours of release from the custody of the Bureau of Prisons,

21  Mr. Jones shall report in person to the probation office in the

22  district to which the defendant is released.  The term of

23  supervised release in the case will run concurrently with the

24  defendant's term of supervised release in the Eastern District

25  of Texas case.

1    While on supervised release, Mr. Jones must not commit

2  another federal, state or local crime and must not unlawfully

3  possess a controlled substance.  Mr. Jones must refrain from

4  any unlawful use of a controlled substance.  He must submit to

5  one drug test within 15 days of release from imprisonment and a

6  maximum of 20 tests per year of supervision thereafter.

7    Mr. Jones must cooperate in the collection of DNA as

8  directed by the probation officer.

9    And he must make restitution in accordance with 18,

10  United States Code, Section three 3663 and 3663A or any other

11  statute authorizing a sentence of restitution.

12    Mr. Jones must comply with the standard conditions

13  that have been adopted by the Court in General Order 2020-20.

14  And the Court finds that the following special conditions of

15  supervision are determined to be reasonably related to the

16  factors that are enumerated in 18, United States Code, Section

17  3553(a) and 18, United States Code, Section 3583(d).

18    Further, based upon the nature and circumstances of

19  the offense and the history and characteristics of Mr. Jones,

20  the following conditions do not constitute a greater

21  deprivation of liberty than reasonably necessary to accomplish

22  the goals of sentencing:

23    Namely, No. 1, Mr. Jones must participate in a program

24  of testing and/or treatment for substance abuse approved by the

25  probation officer and follow the rules and regulations of such

1    program.  The probation officer in consultation with the

2    treatment provider will supervise his participation in the

3    program as to modality, duration and intensity.  Mr. Jones must

4    abstain from the use of alcohol or other intoxicants during the

5    course of treatment and he must not attempt to alter, tamper

6    with or circumvent the testing methods.  Mr. Jones must pay the

7    cost of testing and/or treatment based upon his ability to pay.

8          Second, Mr. Jones must participate in a program of

9    cognitive behavioral treatment approved by the probation

10    officer and follow the rules and regulations of such program.

11    The probation officer in consultation with the treatment

12    provider will supervise his participation in the program once

13    again as to modality, duration and intensity.  Mr. Jones must

14    pay for the cost of treatment based upon his ability to pay.

15          I am not sure if the judge in the Eastern District of

16    Texas imposed that as a condition, but obviously Mr. Jones,

17    despite good reasons for him to be on the straight and narrow

18    given his upbringing, made some bad decisions.  The cognitive

19    behavioral treatment program has had very good demonstrated

20    effects on helping people make better decisions, so I think

21    that would be a good program for Mr. Jones.

22          Third, Mr. Jones must submit his person, property,

23    house, residence, papers, computers and other electronic

24    communications or data storage devices or media or office to a

25    search conducted by a United States probation officer.  Failure

1   to submit to search may be grounds for revocation of release.

2        Mr. Jones must warn any other occupants that the

3   premises may be subject to searches pursuant to this condition.

4   An officer may conduct a search pursuant to this condition only

5   when reasonable suspicion exists that he has violated a

6   condition of his supervision and that the areas to be searched

7   contain evidence of the violation.  Any search must be

8   conducted at a reasonable time and in a reasonable manner.

9        I think that's an appropriate search condition given

10  the nature of not only the Eastern District of Texas case, but

11  also this particular case.  Although the defendant doesn't have

12  gun possession in this case, the fact that he was obviously

13  persuaded to participate in a case that did involve firearms

14  suggests that he maybe has some vulnerabilities to being

15  manipulated in that regard.

16       Fourth, because the sentence does impose restitution,

17  Mr. Jones must pay restitution in accordance with the schedule

18  of payment sheet in the judgment.  He must also notify the

19  Court of any changes in economic circumstances that may affect

20  his ability to pay restitution.

21       Fifth, Mr. Jones must not incur new credit charges or

22  open additional lines of credit without the approval of the

23  probation officer unless he is in compliance with the periodic

24  payment obligations imposed pursuant to the Court's judgment

25  and sentence.

1          Sixth, Mr. Jones must provide the probation officer

2    access to any requested financial information and authorize the

3    release of any financial information until all financial

4    obligations imposed by the Court are paid in full.

5          Seventh, Mr. Jones must apply any monies received from

6    income tax refunds, lottery winnings, inheritances, judgments

7    or any anticipated or unexpected financial gains to the

8    outstanding court-ordered financial obligation in this case.

9          Eighth, Mr. Jones, if he has an outstanding financial

10   obligation, the probation officer may share any financial or

11   employment documentation relevant to him with the Asset

12   Recovery Division of the United States Attorney's Office to

13   assist in the collection of the obligation.

14         The defendant must make restitution to the victim --

15   actually, let me talk about that.  So the victim has submitted

16   to the Court a request for restitution.  But as the probation

17   officer has pointed out, that particular request which is in

18   the record at Docket No. 87-2 does not provide appropriate

19   documentation for the request for restitution that is being

20   made, which is in the amount of $10,000 for ongoing medical

21   treatment expenses.

22         I think that in the event that the victim has

23   submitted to the Court a breakdown and documentation supporting

24   those particular -- a breakdown of the amounts, it is a

25   possibility that some of that could have been ordered as

1    restitution in the case.  The victim does note that she has a

2    workers' compensation case pending, so it's a little bit hard

3    to say, but I do agree with the probation office that at this

4    time the Court cannot grant that particular request because

5    it's simply not supported by documentation that would support

6    some amounts and not certainly the $10,000 amount that the

7    victim has requested.  So at this point in time I will deny

8    that request.

9            However, the Court will order restitution to the

10   company for the loss of money that was stolen in the amounts

11   indicated in the Presentence Investigation Report and will

12   order that the restitution be joint and several with the

13   co-defendants, namely Jimmy Garrison, David Taylor and Justin

14   White.  They have not been sentenced yet, so the total amount

15   imposed on them is yet to be determined.

16           The defendant shall pay a special assessment of $100

17   which is due and payable immediately.  The Court finds that he

18   does not have the ability to pay a fine, so the Court will

19   waive a fine in this case.  The Court does determine, however,

20   that Mr. Jones does not have the ability to pay interest, so

21   the interest requirement will be waived as to the restitution.

22           It is ordered that the monetary obligation shall be

23   due as follows:  The special assessment and restitution are due

24   immediately.  Any unpaid monetary obligations upon release from

25   incarceration shall be paid in monthly installment payments

1   during the term of supervised release.  The monthly installment

2   payment will be calculated as at least 10 percent of Mr. Jones'

3   gross monthly income.

4          The United States filed a request that the Court enter

5   a preliminary order of forfeiture for a personal money judgment

6   which the Court did sign as an order, which is Docket No. 84.

7   Pursuant to Federal Rule of Criminal Procedure 32.2, and based

8   upon the defendant's admission of the forfeiture allegation in

9   the Indictment, the defendant must forfeit to the United States

10  any and all property, real or personal, derived from proceeds

11  from the instant offense.  And as I noted, Docket No. 84 has

12  already been entered as a personal money judgment in the amount

13  of $359,000, and that is a preliminary order and will now be

14  made final.

15         Finally, Mr. Jones is advised of his right to appeal

16  the sentence in this case.  By providing this advisement, I

17  don't mean to suggest that waivers of certain appellate rights

18  in his Plea Agreement are not fully effective.  Rather, if

19  Mr. Jones has any questions about what appellate rights he

20  still has left, he can either consult with Mr. Daniels or he

21  can review his Plea Agreement.

22         Nevertheless, if he desires to appeal, a notice of

23  appeal must be filed with the Clerk of the Court within 14 days

24  after entry of judgment or the right to appeal will be lost.

25  If he is unable to afford an attorney for an appeal, the Court

1   will appoint one to represent him.  If he so requests, the

2   Clerk of the Court must immediately prepare and file a notice

3   of appeal on his behalf.

4          Mr. Jones, it sounds like given the fact that you have

5   been serving some time on that Eastern District of Texas

6   sentence already, you know what it's like to be in prison.  You

7   know what it's like to watch your back.  Seems like you are

8   doing a good job staying out of trouble, keeping your head

9   down, focusing on what you need to do to rehabilitate yourself

10  and be a better person when you get out.  Obviously, the last

11  thing you want to do, just like having bad influences drag you

12  into that particular crime and the crime you are sentenced for

13  in Texas, you don't want bad influences in the Bureau of

14  Prisons to get you in trouble and may cause you to pick up a

15  new case within the Bureau of Prisons.  So it sounds like you

16  are mindful of that.

17         I appreciate Mr. Jones' parents coming today.  They

18  are busy people.  They have a lot of kids they have to worry

19  about.  Having spent money to come up to Denver, obviously it

20  was a bit of a sacrifice too, but Mr. Jones, they are here for

21  you today.  They are here for you tomorrow.  They were here for

22  you at the time that you committed this particular crime.  You

23  just have to understand that.  You are lucky.  There are

24  people, as Mr. Daniels alluded to, before the Court on serious

25  crimes, and although they are fairly young men, no one is here.

1    The family has given up on them.  Your family hasn't given up

2    to you.  They are here for you and they can be of great benefit

3    to you.

4         Mr. Dunn, anything else on behalf of the United

5    States?  I will grant the government's motion to give Mr. Jones

6    the additional one-level decrease for acceptance of

7    responsibility, and I will grant the government's motion,

8    Docket No. 81, to dismiss Count Four of the Superseding

9    Indictment as to Mr. Jones.

10        MR. DUNN:  Thank you, Your Honor.  I have nothing

11   further.

12        THE COURT:  Thank you.

13        Mr. Daniels, anything else on behalf of Mr. Jones?

14        MR. DANIELS:  Just briefly, Your Honor.  Obviously, he

15   was initially imprisoned in Texas.  He would ask the Court to

16   just recommend him returning to Texas to serve his sentence

17   there.  And I have explained to him that the Bureau of Prisons

18   makes that decision in respect to both Your Honor's

19   announcements.

20        THE COURT:  The Bureau of Prisons really does a good

21   job of trying to follow recommendations, but, of course, my

22   recommendation is and will be included in the judgment that he

23   be -- that he serve his sentence in this particular case at the

24   same institution that he has been designated to for his Eastern

25   District of Texas sentence.

1        *MR. DANIELS:*  Would Your Honor be willing to allow to

2    have the supervised release be supervised out of Texas?

3        *THE COURT:*  That is not something that the Bureau of

4    Prisons -- we don't do that because it is so dependent upon

5    what takes place at the end of a particular defendant's

6    sentence, so I won't make a recommendation as to that matter.

7        *MR. DANIELS:*  All right.

8        *THE COURT:*  Anything else, Mr. Daniels?

9        *MR. DANIELS:*  No, sir, Judge.

10       *THE COURT:*  Mr. Jones will be remanded to the custody

11   of the United States Marshals, and the Court will be in recess.

12   Thank you.

13       (Recess at 12:03 p.m.)

14                   REPORTER'S CERTIFICATE

15       I certify that the foregoing is a correct transcript from

16   the record of proceedings in the above-entitled matter.  Dated

17   at Denver, Colorado, this 21st day of September, 2022.

18

19                           S/Janet M. Coppock

20

21

22

23

24

25